IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JESSEE B.,[1] | No. 6:23-cv-01781-YY |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

YOU, Magistrate Judge.

Plaintiff Jessee B. seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on September 17, 2019, alleging a disability onset date of October 10, 2013. Tr. 206-11. The Commissioner denied Plaintiff's claim initially and on

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

reconsideration. Tr. 104-08. Plaintiff filed a written request for a hearing, and a hearing was held before Administrative Law Judge Frank Spaulding in February 2023. Tr. 31-61. The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 12–30. The Appeals Council denied Plaintiff's request for review on September 29, 2023. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision*. Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), major depressive disorder, panic disorder, autism spectrum disorder, and intellectual disability. Tr. 17. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple routine tasks and simple work. She is limited to using judgment to make simple work-related decisions, carrying out simple instructions and occasional changes in a routine work setting. The claimant is limited to goal-oriented work (e.g. housekeeper) but is unable to perform at a production rate pace (e.g. assembly line work or work that requires hourly quotas). She is limited to occasional interaction with coworkers (no teamwork or coordinated work) and occasional interaction with the public (no interaction as an essential function of the job).

Tr. 20.

At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 23. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual

functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as laundry laborer, janitor, and dry cleaner helper. Tr. 23-24. The ALJ therefore found Plaintiff not disabled. Tr. 25.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly discounting her symptom testimony, and (2) failing to properly evaluate the medical opinions of Emil Slatick, PhD, and Zane Curtis, DO. Pl.'s Br., ECF No. 12, at 5. For the reasons that follow, the Court finds the ALJ erred, and reverses and remands for further proceedings.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4

At the hearing, Plaintiff testified that she had a one-year-old child. Tr. 40. The baby's father lived with her. Tr. 40. Plaintiff received a lot of help to care for her baby. Tr. 41. Her mother helped her daily from 10:00 a.m. until 5:00 p.m., and the baby's father helped in the evenings. Tr. 41. Plaintiff's mother worked as her paid direct support professional. Tr. 41-42, 50. She helped Plaintiff in the home and drove her to appointments and errands. Tr. 42. Plaintiff testified that she could not care for her home and child without a direct support professional. Tr. 52. She had not driven in a few years because of anxiety and panic attacks. Tr. 42. She was able to shop in stores with her mother but not alone. Tr. 42-43. Her mother helped her budget. Tr. 43. Plaintiff was able to use the microwave, but her mother did not trust her to use the oven because she had accidentally left it on in the past. Tr. 46. Plaintiff bought microwavable meals, or her mother cooked for her. Tr. 46.

Plaintiff did not graduate from high school, and she had been unsuccessfully trying to achieve a GED since 2016. Tr. 46-47. She struggled with the math portion and stated, "I keep doing it over and over and I'm still ten points away." Tr. 47. She was able to bathe herself, but she needed reminders to brush her teeth, take her medications, and put on deodorant. Tr. 47-48. She wrote everything down that she needed to do in a planner and a calendar. Tr. 48. Her memory was poor, and she had a hard time remembering appointments. Tr. 48. She could not work because of panic attacks. Tr. 48. She also disassociated when away from her safe space, which was her home. Tr. 48. Plaintiff tried working as a caregiver several times during the relevant period, but was let go or quit each time because she could not handle the stress. Tr. 53. She was not currently on any medications because they made her anxiety worse; she was working with her counselor to find natural ways to treat her anxiety. Tr. 49. She found

6 – OPINION & ORDER

counseling to be somewhat helpful. Tr. 49-50. She struggled to understand things said to her or questions asked of her "all the time." Tr. 54.

In written testimony, Plaintiff reported that she had "never been able to keep a job because of [her] social anxiety." Tr. 253. In a typical day, she attended appointments, spent time with her mother, went for a walk, and went to the library if her anxiety level allowed for it. Tr. 254. She had to set reminders to do simple tasks, like put on deodorant, because her "mind has so much in it that [she] forget[s]." Tr. 255. She was able to prepare simple foods but did not cook very often. Tr. 255. She needed encouragement to perform household chores. Tr. 256. She tended to isolate at home because of anxiety. Tr. 257. She could not follow instructions well; she needed visual demonstrations. Tr. 258. She had been fired in the past because of the impact her anxiety had on her ability to maintain attendance. Tr. 258. She had also cried on the job due to stress. Tr. 259. She had tried to work many times, but each job ended after a few months. Tr. 261, 275.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and did not identify evidence of malingering. Tr. 21. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ found Plaintiff's symptom allegations conflicted with objective medical evidence in the record, and that Plaintiff's daily activities conflicted with her testimony. Tr. 21-22.

### A. Objective Medical Evidence

The ALJ cited conflict with the medical record as one of the reasons for discounting Plaintiff's symptom testimony. Tr. 21. The ALJ must evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). The lack of objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chafer*, 157 F.3d 715, 722 (9th Cir. 1998) (holding "the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"). When coupled with other permissible reasons, however, lack of objective medical evidence to support a claimant's allegations may be used to discount a claimant's testimony. *Batson*, 359 F.3d at 1197–98.

The ALJ failed to articulate a clear and convincing reason to discount Plaintiff's allegations about significant social, intellectual, and adaptive functioning deficits because he did not cite objective medical evidence inconsistent with her testimony. At the hearing, Plaintiff testified that her mental health symptoms made it impossible for her to work full time. Tr. 48. She "tried numerous times," but would get panic attacks and dissociate any time she was away

from home by herself or in a work setting. Tr. 48-49. In written testimony, Plaintiff emphasized that her mental health symptoms made it impossible for her to follow verbal instructions or consistently show up for work. *See, e.g.,* Tr. 257-58.

The ALJ acknowledged this testimony, but did not cite any medical record that directly undermines it. Tr. 20-21. He summarized aspects of the medical record, but provided no explanation for how this evidence undermined Plaintiff's testimony regarding the severity and limiting effects of her symptoms. Tr. 20-21. When discounting symptom testimony, an ALJ's decision "must made a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958 (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991)). An ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. The ALJ failed to do so here. That leaves this reviewing court to surmise which "testimony [the ALJ] found not credible" and what "particular parts of the record supporting [the ALJ's] non-credibility determination." *Id.* Failure to provide such clear analysis is error; therefore, conflict with objective medical evidence was not a sufficiently clear and convincing reason for discounting Plaintiff's symptom testimony about her limitations.

    B.  *Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 21. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant

regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has held such routine activities as playing video games, using public transportation, and preparing meals may undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050) (quoting *Fair*, 885 F.2d at 603).

The ALJ failed to identify transferable work skills or inconsistencies between Plaintiff's daily activities and symptom testimony, and therefore erred. The ALJ concluded that Plaintiff's "alleged need for a caregiver is inconsistent with her ability to tend to activities of daily living independently," and highlighted her ability to "tolerate various outings with family and friends, including a trip to the coast and attending a rodeo." Tr. 21. Neither is a transferable work skill, and the ALJ failed to identify an inconsistency that is supported by substantial evidence. First, Plaintiff was not, as the ALJ suggested, able to "tend to the activities of daily living independently." Tr. 21. To the contrary, the record shows Plaintiff relied on her mother to do basic daily activities like preparing meals, running the washing machine, and caring for her child. Tr. 52, 700. Second, the ALJ's discussion of Plaintiff's "various outings" failed to explain what symptom testimony was undermined by those isolated incidents. *Smolen*, 80 F.3d at 1284. Because the ALJ did not explain how occasional outings outside the home undermined Plaintiff's subjective symptom testimony, and overstated Plaintiff's ability to "tend to activities of daily living," the ALJ did not support the decision to discount Plaintiff's testimony as inconsistent with her daily activities with substantial evidence. Tr. 21.

In sum, the ALJ erred in rejecting Plaintiff's subjective symptom testimony by failing to provide specific, clear, and convincing reasons as to why her testimony contradicted, or was undermined by, the objective medical record and her activities of daily living.

## II.     Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

11 – OPINION & ORDER

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

  A. Dr. Emil Slatick, PhD

In December, 2019, Plaintiff saw Dr. Slatick for a neurodevelopmental evaluation. Tr. 337. Dr. Slatick reviewed available medical records and administered a diagnostic interview and several psychometric tests, including the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV"), the Minnesota Multiphasic Personality Inventory – Second Edition ("MMPI-2"),

the Adaptive Behavior Assessment System – Third Edition ("ABAS-3"), and the Gilliam Autism Rating Scale – Third Edition. Tr. 337.

Dr. Slatick diagnosed plaintiff with autism spectrum disorder, intellectual disability, generalized anxiety disorder, obsessive-compulsive disorder, and depressive disorder with anxious distress. Tr. 346. Dr. Slatick noted that Plaintiff's eye contact was poor, affect was restricted, and social behavior was not well developed. Tr. 337. Cognitive limitation was suggested based on communication skills, social behavior, and content of thought. Tr. 337. Results of the WAIS-IV revealed a verbal comprehension score of 68, a perceptual reasoning score of 69, a working memory score of 77, a processing speed score of 53, and a full-scale IQ of 61. Tr. 341. Results of the ABAS-3 revealed a general adaptive composite score of 68, indicating "significant deficits (=/> 2 standard deviations below the normative mean) in the areas of communication, self-direction, leisure activity, social behavior, and health and safety." Tr. 345. Testing results suggested that Plaintiff's level of intellectual functioning was within the "extremely low" range. Tr. 345. Dr. Slatick noted that "[i]ndividuals with Full Scale IQ scores within the 'extremely low' range are almost certain to experience difficulties in academic and other learning endeavors." Tr. 345-46. Further, such individuals are more likely than others to exhibit deficits in adaptive behavior such as those described above. Dr. Slatick opined that Plaintiff would likely require ongoing support in the areas of communication, self-direction, leisure activity, social behavior, and health and safety. Tr. 346.

Dr. Slatick recommended that Plaintiff consult with personnel at the Developmental Disabilities Program to access any services that might be available to her. Tr. 346. He also recommended counseling services and social skills training, concluding, "[Plaintiff] is likely to experience significant difficulties in any academic, formal training, or employment environments

and might wish to consider applying for social security benefits so that she can receive assistance with basic needs until such time as she might be able to maintain employment." Tr. 347.

The ALJ considered the supportability and consistency of Dr. Slatick's opinions, but failed to support his finding that those opinions were "not persuasive" with substantial evidence. "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Here, the ALJ rejected Dr. Slatick's opinion as inconsistent with the overall medical record, and unsupported by evidence in the record that Plaintiff could "manag[e] daily activities and the care of an infant child." Tr. 22. The ALJ also discredited Dr. Slatick's opinion because it did not "provide details about specific areas of work-related function." Tr. 22. Neither rationale is supported by substantial evidence. First, as indicated above, Plaintiff's daily activities and part-time care for her child do not undermine her testimony (and Dr. Slatick's corroborating medical opinion) that she cannot handle an eight-hour work day or even independently manage many of her daily tasks. *See, e.g.,* Tr. 41-46 (describing Plaintiff's need for supported living services in her home). Furthermore, Dr. Slatick's opinion does indeed address Plaintiff's ability to handle "work-related function(s)." For example, Dr. Slatick opined that Plaintiff's ability to process simple or routine visual material is in the "extremely low range." Tr. 342. He likewise found her verbal comprehension was in the "extremely low range." Tr. 341. Dr. Slatick opined that these deficits would result in "great difficulty" in keeping up with others in these areas. Tr. 341-42. These difficulties map almost directly onto categories ALJs consider when evaluating a claimant's ability to work, like "understanding, remembering or applying information," or "interacting with others." *See* Tr. 18. These are the only two bases the ALJ relied upon to discount Dr. Slatick's opinion. Tr. 22. Neither undermines the supportability or consistency of

Dr. Slatick's findings, and the ALJ erred by rejecting Dr. Slatick's medical opinion without citing substantial evidence in support of doing so.

  B. *Dr. Zane Curtis, D.O.*

In February 2021, Plaintiff saw Dr. Curtis for a telemedicine psychological consultative evaluation. Tr. 357. Dr. Curtis reviewed available medical records and administered a clinical interview and mental status examination. Tr. 357.

Dr. Curtis described Plaintiff's mood as "calmer than normal," and observed a mood congruent affect. Tr. 361. Plaintiff made appropriate eye contact. Tr. 361. Her language was expressive and receptive. Tr. 361. Her level of intelligence was estimated to be below average. Tr. 361. Immediate recall was 3/3, and delayed recall was 1/3. Tr. 362. Her insight was considered impaired. Tr. 362. Her ability to sustain attention to perform simple, repetitive tasks was intact. Tr. 363. Her ability to relate to others, including fellow workers and supervisors, was intact. Tr. 363. Dr. Curtis diagnosed plaintiff with intellectual disability, autism spectrum disorder, and generalized anxiety disorder. Tr. 363. Dr. Curtis opined that plaintiff's ability to understand, retain, and follow instructions and to tolerate the stress/pressures associated with day-to day work activity were "impaired." Tr. 363. His opinion did not describe how "impaired" plaintiff was in these categories, or how those impairments affected her ability to handle full-time employment. Tr. 363. The ALJ found Dr. Curtis's opinion only partially persuasive, disregarding the finding that she was "impaired" because it "did not define what 'impaired' meant in functional terms," and it relied too heavily on Plaintiff's self-reports.

As an initial matter, the ALJ reasonably found Dr. Curtis's opinion that Plaintiff had deficits in two categories of work-related activities was persuasive, and incorporated those limitations into the RFC. The supportability and consistency factors require an ALJ to inquire

15 – OPINION & ORDER

into "the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," and whether the opinion aligns with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(1-2). The ALJ reasonably concluded that Dr. Curtis's clinical interview and evaluation notes supported the opinion that plaintiff had some difficulty with understanding, retaining, and following instructions and tolerating stress/pressures of work. Tr. 23. The ALJ translated those issues into associated limitations in the RFC. Tr. 23. The ALJ further found these limitations consistent with other aspects of the record. Tr. 23. Thus, the ALJ sufficiently addressed the supportability and consistency of Dr. Curtis's opinions about Plaintiff's difficulties with understanding, retaining, and following instructions and tolerating stress/pressures of work, and supported his consideration of that aspect of Dr. Curtis's opinion with substantial evidence.

Furthermore, the ALJ did not err when he disregarded parts of Dr. Curtis's narrative that did not amount to medical opinions. ALJs are not obligated to do a supportability and consistency review of every statement in a medical provider's record, only of the "medical opinions" it contains. 20 C.F.R. § 416.920c. The regulations for claims filed after March 27, 2017, define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 416.913 (a)(2)(i)-(iv). To merit consideration, then, a medical provider's opinion must discuss both a claimant's limitations and "what [the claimant] is still capable of doing despite those limitations." *Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423, at *15 (E.D. Cal. May 5, 2023).

Plaintiff argues the ALJ erred by failing to analyze the consistency of Dr. Curtis's observation that she was "impaired" with, for example, Dr. Slatick's more comprehensive evaluation. Pl. Br., ECF No. 12 at 15. But these parts of Dr. Curtis's narrative do not qualify as a

medical opinion because they do not provide any description of what Plaintiff could still do despite her difficulties tolerating stress and understanding, retaining, and following instructions. Tr. 363-64.[2] Nothing in the record or Plaintiff's briefing shows where Dr. Curtis identified what plaintiff can do despite these limitations; the sum total of the opinion is that symptoms of autism, anxiety, and an intellectual disability made her "impaired" in two categories of "workplace functions." Tr. 363. Because that is not a "medical opinion" that requires independent analysis under the regulations, the ALJ did not err by finding Dr. Curtis's comments unpersuasive because the doctor did not define what "impaired" meant in terms of how it would limit Plaintiff at work.

### III. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

---

[2] Plaintiff also argues the ALJ erred by discounting Dr. Curtis's opinion that she was "impaired" because it was based on her "self-report[s]." Tr. 23. As Plaintiff points out, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Dr. Curtis reviewed available records and "conducted a clinical interview and a mental status evaluation. These are objective measures and cannot be discounted as a 'self-report.'" *Id.* As indicated above, however, Dr. Curtis did not provide a "medical opinion" regarding the extent of Plaintiff's work-related limitations as a result of being "impaired." Therefore, any error the ALJ might have committed by identifying Plaintiff's self-reports as a source of Dr. Curtis's conclusions was harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

17 – OPINION & ORDER

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony and by failing to support his decision finding Dr. Slatick's opinion unpersuasive with substantial evidence. After reviewing the record, however, conflicts and ambiguities remain between the medical record and Plaintiff's testimony and the medical opinions regarding whether Plaintiff's social, intellectual, and adaptive functioning deficits rendered her totally unable to work during the relevant period. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate Plaintiff's testimony and Dr. Slatick's opinion, reformulate the RFC, if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

DATED: September 30, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
